IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

JOSEPH J. SMITH                                                                                          PLAINTIFF
ADC #127880

V.                                           NO. 5:07cv00198 WRW-JWC

CARL GRISWOLD, et al                                                                            DEFENDANTS

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

### I. Instructions

The following recommended disposition has been sent to United States District Court Judge William R. Wilson, Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and two copies of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of these findings and recommendations. A copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.  Why the record made before the Magistrate Judge is inadequate.

2.  Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

> 3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR  72201-3325

## II. Recommended Disposition

On July 27, 2007, Plaintiff, a pro se inmate currently confined to the Delta Regional Unit of the Arkansas Department of Correction ("ADC"), filed this 42 U.S.C. § 1983 civil rights action (doc. 2). On March 19, 2008, Defendant Griswold filed a motion for summary judgment, brief in support, and statement of indisputable material facts (doc. 43, 44, 45) seeking to dismiss Plaintiff's complaint on the grounds that he failed to exhaust his administrative remedies, and he has failed to state a viable claim.  Five days later, Defendants Anderson and Correctional Medical Services ("CMS") also filed a motion for summary judgment, brief in support, and statement of indisputable material facts (doc. 49) and pursuant to Fed. R. Civ. P. 10(c), adopted by reference those portions of Defendant Griswold's motion, brief, and statement of facts which assert that Plaintiff has failed to exhaust his administrative remedies. Pursuant to order entered March 20, 2008 (doc. 47), Plaintiff has responded to the motions (doc. 72, 73, 74, 93).

According to Plaintiff's amended complaint (doc. 9), he entered former Defendant Norris' custody on July 15, 2003. At the Diagnostic Unit, eye examinations were conducted

and Plaintiff's vision was reported to be 20/20 in both eyes.  Plaintiff's initial medical classification was M2 due to a shoulder injury sustained in a 1998 shooting.  Plaintiff had no vision problems until September 2004 when, after being placed in administrative segregation in the Varner Super Max Unit he was pepper sprayed and/or gas maced by Defendant Griswold, received no medical attention, and his vision began to deteriorate.[1]  Plaintiff contends that this chemical reaction caused his future sight loss.

Plaintiff further alleges that on September 15, 2005, Dr. Simmons diagnosed him with a cornea disease and recommended surgical replacement of each cornea.  On January 19, 2006, Dr. Scott changed Plaintiff's medical status from M2 to M3 due to his poor vision.  On April 5, 2006, cornea surgical specialist Dr. Dang performed "keratotomy" on Plaintiff's right eye at the Jones Eye Center in Little Rock.  On April 28, 2006, Dr. Scott noted that Plaintiff was blind in the left eye with "keratoplasty" performed on the right eye, changing Plaintiff's medical status from M3 to M4.  On July 6, 2006, Dr. Dang noted that vision in the right eye was greatly improved and recommended the same surgical repair to Plaintiff's left eye.  Three other doctors have allegedly concurred in this recommended treatment.[2]  Plaintiff alleges that on July 18, 2006, Defendant Anderson denied surgical treatment for the left eye because "binocular vision in right eye after surgery was adequate for activities of daily living" and instead has prescribed droplets and ointments which Plaintiff claims he will either become immune to or addicted to and will offer only temporary

---

[1] Plaintiff alleges that he was sprayed for flooding tiers in the cell block when he was not involved in the incident, was housed in a single man cell, and did not require extraction from the cell.

[2] Dr. Simmons, the state's optometrist, Dr. Richard Scott, a retired surgeon who is currently employed by former Defendant Norris, and Dr. Jennifer Anderson, a cornea specialist.  Dr. N Ten Dang is a cornea surgical specialist.

relief. Plaintiff contends that this denial amounts to deliberate medical indifference and violates his Eighth Amendment rights. Plaintiff further contends that CMS has condoned Defendant Anderson's cruel and unusual punishment and that CMS' policy is hindering his personal safety. In addition, Plaintiff claims that the surgically repaired right eye was re-injured in a "stairway collision" while he was performing barracks porter duties on the night of September 13, 2006, that resulted in the implanted cornea lense moving to "an unlocated area" due to a fingernail tear of the stitches. As relief, Plaintiff requests a court-ordered cornea transplant to his left eye, repair of his right eye, and damages.

### III.  Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The Court must view the evidence in the light most favorable to the nonmoving party, giving him the benefit of all reasonable factual inferences. Reed v. ULS Corp., 178 F.3d 988, 990 (8th Cir. 1999). A moving party is nevertheless entitled to summary judgment if the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he will have the burden of proof at trial. Celotex, 477 U.S. at 322-23. To avoid summary judgment, the nonmovant must go beyond the pleadings and come forward with specific facts, "by [his] own affidavit" or otherwise, showing that a genuine, material issue for trial exists. Id. at 324; Fed. R. Civ. P. 56(e). A nonmovant has an obligation to present affirmative evidence to support his claims. Settle v. Ross, 992 F.2d 162, 163-64 (8th Cir. 1993). A litigant's verified complaint is generally

considered an affidavit for purposes of summary judgment. Burgess v. Moore, 39 F.3d 216, 218 (8th Cir. 1994). Moreover, pro se complaints must be liberally construed and held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

### IV. Analysis

Defendants affirmatively assert that Plaintiff failed to properly exhaust his administrative remedies prior to filing this lawsuit by timely filing and appealing a grievance regarding the issues raised in his July 27, 2007, complaint, and in his September 4, 2007, amended complaint. An inmate must exhaust all available administrative remedies prior to initiating a § 1983 prison conditions suit. 42 U.S.C. § 1997e(a) ("[n]o action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted"); Johnson v. Jones, 340 F.3d 624, 627 (8th Cir. 2003) ("Under the plain language of § 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court . . . . If exhaustion was not completed at the time of filing, dismissal is mandatory"); Graves v. Norris, 218 F.3d 884, 885 (8th Cir. 2000) (holding that "all available prison grievance remedies must be exhausted as to all of the [plaintiff's] claims"); Chelette v. Harris, 229 F.3d 684, 688 (8th Cir. 2000), cert. denied, 531 U.S. 1156 (2001) (stating that "if administrative remedies are available, the prisoner must exhaust them," regardless of his subjective beliefs about their availability). Exhaustion of remedies requires the inmate to first attempt informal resolution and then to timely file and appeal a particular grievance through several administrative levels. Plaintiff was required

to appeal his grievance(s) to the highest administrative level, the Deputy/Assistant Director of the ADC.  See ADC Adm. Dir. 04-01 § IV(E-G) (March 1, 2004).[3]

An inmate's failure to identify by name during the grievance process each individual defendant he later sues in federal court no longer mandates dismissal pursuant to § 1997e(a).  The United States Supreme Court's decision in Jones v. Bock[4] held that such an omission was not fatal to a plaintiff's entire case.  The plaintiff in Jones challenged the rule requiring that every defendant to be named in a subsequent lawsuit must also be named during the grievance process as well as the "total exhaustion" rule.  The Jones court concluded that "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances."  Jones held that the PLRA itself does not impose such a requirement; instead, the parties must look to what the prison grievance process itself requires.  "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  Id. at 218.  Jones additionally rejected the "total exhaustion" rule requiring dismissal of the complaint as a whole, concluding instead that courts should proceed with the exhausted claims in instances where the plaintiff has failed to exhaust some, but not all, of the claims asserted.  Id. at 219-21.

---

[3] Pursuant to the ADC grievance procedure policy, an inmate must: (1) file an informal resolution form within 15 days after the occurrence of an incident in which they believe they have been wronged; (2) file a formal grievance within three days if the informal resolution attempt is unsuccessful; (3) appeal the denial of that grievance to the warden; and (4) appeal the warden's decision to the ADC Deputy/Assistant Director ( Doc. 44; Exh. A, Affidavit of Tiffanye Compton).

[4] 549 U.S. 199 (2007).

The evidence establishes that Plaintiff filed Grievance DR-06-00293 on August 22, 2006. In it he states he was diagnosed with Keratoconus by Dr. Simmons. In January 2006, he was seen by Dr. Dang who diagnosed the same issue in both eyes and told Plaintiff that surgery was necessary to both eyes. On April 5, 2006, he had a cornea transplant on his right eye. Upon review of his medical jacket in July 2006, Dr. Anderson refused Plaintiff surgery to the left eye. Plaintiff's grievance states that surgical transplant and/or treatment has not been scheduled for repair. The Warden responded to Plaintiff's grievance on August 23, 2006, determining that the grievance was of a medical nature and therefore forwarded to the medical administrator for written response or personal interview. Plaintiff never appealed the Warden's response and has provided no documentation of a response from the medical administrator or any appeal of that decision either; thus, exhaustion of Grievance DR-06-00293 was never completed.

Plaintiff filed Grievance DR-07-00024 on January 25, 2007, which reiterates the facts of Grievance DR-06-00293 including his need for surgery to his left eye, explains that he re-injured his right eye on September 14, 2006, and has yet to receive treatment for it,[5] further explains that his sight began to deteriorate following an accidental mace incident in October 2004 involving Defendant Griswold,[6] and complains that he has twice been

---

[5] Plaintiff contradicts this assertion in his statement of support when he indicates that he re-injured his right eye on September 13, 2006, "and repairs were done on September 14, 2006." (see doc. 74, pg. 6, ¶35). He additionally contradicts this assertion in his supplemental response to Defendants' motions for summary judgment when he states: "September 14, 2006, Re-stitching surgery was done, doctors at UAMS said the implanted lense was knocked out." (see doc. 93, pg. 5).

[6] An incident that Plaintiff acknowledges was never documented and the only medical treatment he received was Defendant Griswold's instructions to thoroughly rinse his eyes out in his cell shower.

assigned to a job even though his medical classification is M-4. This grievance was summarily rejected as untimely by Warden Mark Cashion (doc. 2, pg. 19; doc. 44).[7] Deputy Director Ronald Dobbs denied Plaintiff's grievance appeal, indicating in his Deputy/Assistant Director's Decision he had reviewed grievance DR-07-00024, the Warden's decision, Plaintiff's appeal, Plaintiff's informal resolution, and Inmate Grievance Procedure Policy AD 04-01 (doc. 2, pg. 20; doc. 44; Exh. A, Affidavit of Tiffanye Compton – Attachment 3). Deputy Director Dobbs found the grievance had been properly addressed at the unit level, expressly stating he agreed with Warden Cashion's response that the grievance was untimely. Plaintiff contends that the grievance was fully exhausted, even though never addressed on the merits, when he received the Deputy/Assistant Director's denial (see doc. 72, pg. 4).

Defendants contend that Plaintiff's failure to properly file a grievance within the time frame established by the ADC grievance policy bars him from filing a lawsuit regarding those claims and requires dismissal of his lawsuit pursuant to the Supreme Court's holding in Jones v. Bock, supra. The alleged pepper spray/gas mace incident purportedly occurred on a date uncertain in October 2004 (doc. 2, pg. 6; doc. 9, pg. 8), yet Plaintiff did not mention the alleged incident in an informal resolution or grievance until January 25, 2007,

---

[7] Warden Cashion responded to Plaintiff's grievance in writing on January 31, 2007, advising Plaintiff that informal resolutions should be submitted within fifteen (15) days after the occurrence of the incident (doc. 2, pg. 19; doc. 44; Exh. A, Affidavit of Tiffanye Compton – Attachments 1 & 2). Warden Cashion further noted Plaintiff's January 25, 2007, informal resolution exceeded the time frame for submitting a grievance for the incident as it occurred at the Varner Unit two or three years ago. The grievance was returned to Plaintiff without a determination on its merit (doc. 2, pg. 19; doc. 44; Exh. A, Affidavit of Tiffanye Compton – Attachment 2).

more than twenty-seven months later (Grievance DR-07-00024; doc. 2, pgs. 17, 18).[8] Neither Plaintiff's first informal resolution nor his first grievance (DR-06-00293), both of which are dated August 22, 2006, contain a single allegation regarding Defendant Griswold's use of pepper spray in October 2004 (doc. 2, pgs. 12, 13). Defendants further contend that Plaintiff's failure to comply with the ADC's fifteen-day limitation period severely hampered the ADC's ability to correct any problems with his medical needs— i.e., had Plaintiff complied with the ADC's fifteen-day limitation period, the ADC medical provider would have had the opportunity to assess his medical condition immediately in order to determine if his eyes had in fact been injured by any use of pepper spray or whether an additional surgical intervention was necessary after the right eye had been repaired— a surgical repair that Plaintiff now admits took place the day after his re-injury.

In Woodford v. Ngo, 548 U.S. 81 (2006) the Supreme Court held that § 1997e(a) requires, "proper exhaustion" of an inmate's administrative remedies. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings. Id. at 90-91. Plaintiff's belated filing of a grievance does not comply with the ADC's grievance procedure, the procedure that determines proper exhaustion. Plaintiff never grieved the original mace incident that he attributes to his eyesight loss,[9] he did not grieve the alleged denial of medical treatment in

---

[8] Plaintiff contends he did not mention the actual cause of his vision deterioration in Grievance DR-06-00293 because Nurse Holman told him since there was no record of the incident, it couldn't have happened (see doc. 74, pgs. 4-5).

[9] Plaintiff contends that had he known the mace would affect his future eyesight he would have pursued the grievance process in a timely manner. The Court notes, however, that Plaintiff's grievances concern the denial of surgery to his left eye and surgical repair to his re-injured right

conjunction with the September 13, 2006, re-injury of his right eye until January 25, 2007, almost four months after the re-injury occurred, and the grievance he did file concerning Dr. Anderson's refusal to approve surgery for his left eye (DR-06-00293), although timely filed, was never appealed to the Deputy/Assistant Director and was therefore never fully exhausted.  The only fully exhausted grievance (DR-07-00024) was denied by both the Warden/Center Supervisor and the Deputy/Assistant Director as untimely and never addressed on its merits. Because Plaintiff has failed to properly exhaust his administrative remedies as to any claim in this lawsuit, the law mandates that his complaint be dismissed in its entirety.  As a collateral matter, the Court notes that Plaintiff's original request for a court-ordered cornea transplant to his left eye and repair of his right eye is moot.  His right eye was repaired the day after it was re-injured (see fn. 5) and prior to the filing of this lawsuit.  On May 1, 2008, Plaintiff's left cornea was surgically replaced by Dr. Bhairvari Kharod at the Jones Eye Institute (see doc. 93, pg. 8).

### V.  Conclusion

In accordance with the above, IT IS, THEREFORE, RECOMMENDED that:

1. Defendant Griswold's motion for summary judgment (doc. 43) should be GRANTED.

2. Defendants Anderson's and CMS' motion for summary judgment (doc. 49) should be GRANTED.

3. Plaintiff's case should be DISMISSED in its entirety and all pending motions should be DENIED AS MOOT.

---

eye, not holding Defendant Griswold liable for the original mace incident to which he attributes his eyesight loss (see doc. 73, pgs. 5-6).

4.      The Court should certify, pursuant to 28 U.S.C. § 1915(a)(3), that an in forma pauperis appeal from any order adopting this recommendation, and any judgment entered thereunder, would not be taken in good faith.

DATED this 4th day of March, 2009.

_____
UNITED STATES MAGISTRATE JUDGE